31460. AMERICAN MUTUAL LIABILITY INSURANCE COMPANY *et al. v.* WILLIAMS.

DECIDED MAY 1, 1947.

*Neely, Marshall & Greene,* for plaintiffs in error.
*Andrew J. Tuten,* contra.

GARDNER, J. 1. There are two questions for determination: (a) Did the court err in affirming the award in view of the fact that the defendants were denied the right of cross-examination? (b) Was the director authorized under the evidence to find and order the defendants to pay medical expenses? Unless the court committed reversible error in one of these particulars, the case should be affirmed. We will deal with these questions in the order named.

There were several hearings in the case, and both parties were represented by counsel. Both parties introduced expert medical testimony—the claimant by his physician, Dr. Sharpe, and the defendants by Dr. Hancock. After the record had been closed insofar as the submission of testimony by the parties was concerned, and before an award was made by the hearing director, the director addressed a letter to the attorneys for both parties as follows:

"April 4, 1946. Hon. Andrew J. Tuten, Attorney-at-Law, Alma, Georgia.

"Hon. Harry L. Greene, 1040 Hurt Bldg., Atlanta, Georgia.

"Re: J. E. Williams, v. J. A. Jones Construction Company and American Mutual Liability Insurance Company—C 540-W.

"Gentlemen: With reference to the above captioned matter this is to advise that after a review of the record, I find a very serious conflict between the two physicians who testified in said matter. After careful consideration the undersigned has elected to have the claimant examined by the board's disinterested physician, Dr. F. C. Mims, 420 Mortgage Guarantee Building, Atlanta, Georgia. When said medical examination has been made a copy of the medical findings will be submitted to the parties, seeking to have same made a part of the record without further hearing; however, in the event the parties do not agree the matter will be set down for hearing in Atlanta, Georgia, wherein the testimony of Dr.

Mims will be taken. It is directed that the employer and/or insurer furnish the necessary transportation expense to the claimant for this examination. Please give this matter your earliest attention in order that a decision may be rendered as quickly as possible. ' Very truly yours, Harry E. Monroe." The claimant was examined by Dr. Mims. The director did not furnish counsel for the defendants a copy of the report of Dr. Mims. And without further notice to the defendants or their counsel, on. May 9, rendered an award in favor of the claimant. In this award the hearing director goes into detail regarding the findings in the report of Dr. Mims, the board's disinterested physician, and after reviewing the testimony of Dr. Sharpe, states, "this testimony of Dr. Sharpe was substantially corroborated by the testimony of Dr. F. A. Mims." Then follows a detailed finding of Dr. Mims, as to the disability and extent of the disability of the claimant. So far as the record reveals, neither the defendants nor their counsel had any notice that the director would base his findings, on the report of Dr. Mims, without giving the attorneys for the defendants an opportunity to cross-examine Dr. Mims under oath, as the law provides. We think this was reversible error.

Able counsel for the claimant contends that since there is some evidence to sustain the award of the single director, that the judgment should be affirmed. He further contends that the defendants should have made objections before the hearing director or the full board, and that since this was not done the objections came too late in the superior court. This reasoning does not seem to be sound. The rule that an award shall be sustained if there is any evidence to support it means evidence procured at a hearing where both parties and their counsel have a right to be heard, and to cross-examine the witnesses who testified against them. This is fundamental in all judicial hearings. The hearing director. and the board have no right to take testimony ex parte or on their own motion and base an award on it, without giving the parties and their counsel an opportunity to be present and to cross-examine. the witnesses if they desire, any more than any other tribunal would have. The only other way in which testimony or evidence may be legally considered as a basis of an award is by consent or waiver. This is not a new question. This court in the case of *Caldwell* v. *American Mutual Liability Ins. Co., 45 Ga. App.* 82

(163 S. E. 247) said: "Where, on the hearing of a claim for compensation before one of the members of the industrial commission, it was, on motion of counsel for the claimant, ordered that the claimant be examined by a physician who was not present at the hearing, as provided in section 62 of the Workmen's Compensation Act, but where counsel for the employer and the insurance carrier did not waive the right to subject the physician to cross-examination, and 'did not agree for the report to come in until after they had examined it, with the view of determining whether they wished to cross-examine,' and where the physician appointed afterwards examined the claimant and made a written report of the examination, which was sent to the industrial commission, and the report, which was favorable to the claim for compensation, was considered by the commissioner in making an award of compensation, and where it does not appear that counsel for the employer and the insurance carrier had an opportunity to subject the physician to cross-examination, the exception to the award in an appeal to the full commission, upon the ground that the award was contrary to law because the physician had not been subjected to cross-examination, was meritorious. The judge of the superior court did not err in reversing the award of the full commission affirming the award of the sole commissioner, and in setting the award aside." In the *Caldwell* case, the objection was urged on an appeal from the decision of the hearing director to the full board. In the instant case the appeal was made directly to the superior court. An appeal to the superior court may be made from an award of a single director. *American Mutual Liability Ins. Co.* v. *Lindsey,* 63 *Ga. App.* 658 (11 S. E. 2d, 512). Hence the defendants were authorized to urge on appeal to the superior court that the award of the director in connection with his letter was based upon statements of Dr. Mims which the director obtained without giving the defendants or their counsel an opportunity to be present and cross-examine Dr. Mims under oath. We have read the numerous authorities cited by the attorneys for the claimant. We do not think the principles of law involved in those decisions, under their facts, are applicable to the instant case.

Counsel for the claimant relies strongly on the case of *American Mutual Liability Ins. Co.* v. *Sisson,* 198 *Ga.* 623 (32 S. E. 2d,

295). We think the facts in that case clearly distinguish it from the facts in the instant case relative to the question under consideration. We realize that in a case arising under the Workmen's Compensation Act "processes and procedure . . . shall be as summary and simple as reasonably may be . . and the technical *niceties* of pleading and procedure as applied to other courts need not be strictly complied with." *Jones* v. *American Mutual Liability Ins. Co.,* 48 *Ga. App.* 352 (172 S. E. 600). In our opinion the abridgment of the right of cross-examination is not a mere nicety, but is a substantial right. In the *Sisson* case, supra, all the evidence admitted was during the course of a judicial hearing. There is quite a distinction between a harmless error committed during the procedure of a judicial hearing and an abridgment of the fundamental right of cross-examination by the abandonment of any sort of procedure. The latter strikes substantially at the very purpose of procedure. To hold otherwise would be to say that the State Board of Workmen's Compensation could take the evidence of the claimant in a judicial hearing and thereafter abandon the procedure of a judicial hearing and take all other evidence on the streets without notice to either party or without giving them a chance to be present and cross-examine the witnesses. We do not think that the decisions of the court to the effect that the award of the board must be sustained on appeal, if there is any evidence to sustain the award, means that the board may abandon the substantial law of procedure in any such manner, as above mentioned. The act itself provides that all parties interested must be notified of the time and place of hearing and have the right at such hearing to swear witnesses in their own behalf and to cross-examine the witnesses offered by the other side.

The hearing director allowed the claimant the medical expenses of Dr. Sharpe from January 20, 1945, and ordered the defendants to pay such expense. In the award the director found: "The next question is medical expenses and the employer and/or insurer's liability therefor under the Code section, it appearing that the claimant living in Alma, Georgia, a distance of some 100 miles from the shipyard and after leaving the employment, the claimant sought the services of his physician, Dr. W. W. Sharpe, in his home town. Certainly the director thinks this is an emergency as contemplated under the medical section of the Civil Code.

The director is of the opinion that the employer and/or insurance carrier would not be liable for any medical expenses incurred by Dr. Sharpe while he was employed at the shipyard, but after January 20, 1945, and while claimant was incapacitated to the extent that he was unable to travel to and from Brunswick, the director is of the opinion that the employer and/or insurer would be liable for the expense in accordance with the above-quoted section of the act as constituting an emergency over which the claimant had no control." On that date the claimant contends he was forced to quit work because of injuries received. It is urged by the defendants that they were not consulted; that they never declined to give claimant treatment and did not know that Dr. Sharpe was treating him. This medical expense was allowed under the Code, § 114-501. In our opinion this court has construed that portion of the provisions of this Code section here brought into question adversely to the defendants in the case of *United States Fidelity & Guaranty Co.* v. *O'Byrne*, 61 *Ga. App.* 806 (7 S. E. 2d, 689). We quote: "It is contended by the plaintiff in error that the quoted Code section does not give to the Industrial Board the power to order the payment of medical expenses, after they had been incurred, for a period exceeding ten weeks. We are unable to agree with this contention. The Workmen's Compensation Act is to be construed so as to carry into effect its beneficent intentions. . . So in the case at bar, the authority given by the legislature to the board to order the treatment in the first instance carried with it the power to ratify the procuring of the treatment after it had been rendered. The essence of the legislation is the requirement of the *exercise of a discretion* on the part of the board upon the subject, and not the *time* of its exercise." We might add here that the first paragraph of the supplement to the above-cited Code section provides that such additional time beyond ten weeks "as in the judgment of the State Board of Workmen's Compensation will tend to lessen the period of disability." And the last paragraph of said supplement to that section reads: "If in an emergency on account of the employer's failure to provide the medical or other care as herein specified, a physician other than provided by the employer is called to treat the injured employee, the reasonable cost of such service shall be paid by the employer if so ordered by the board. (Acts 1937, pp. 230, 233, 528, 532; 1943, pp. 167-

169.)" Under the evidence in this case the director was amply authorized to find that the employer had failed to provide the medical care, which it owed the claimant under the provisions of the Workmen's Compensation Act. It is true that they did not expressly deny the medical aid, but the physicians, be they ever so honest, took the attitude from the date of the accident throughout the hearing that the injuries which the claimant received were, in the words of the doctor who first treated the claimant, "painful but superficial injuries," and that the condition of the claimant at the time of the hearing was merely arthritic and that there was no connection or relation between the changes as shown in the x-rays and the injuries which the claimant sustained. No x-rays were made of the claimant by the employer's medical staff until after the claim was filed and not until July, 1945, and the physician who made these x-rays testified that the condition of the plaintiff at the time of the hearing had no connection or relation to the injury which he received on August 29, 1944. However, the evidence of the other physician showed that the claimant had a skull fracture and a contusion besides numerous other wounds which he sustained from the fall. The evidence further shows that the claimant was strong and healthy and did not miss a day from his work until after the injury. And that from the date of the injury, the evidence shows that he could not work and the foreman under whom the claimant worked advised the claimant to sit around and draw his pay. The evidence further shows that the family physician of the claimant removed the sutures and treated the claimant from a few days after his injury until the date of the hearing. The evidence shows that the claimant grew progressively worse; that his left arm became atrophied and the director found that he was totally disabled and incapable of performing any kind of work. The claimant testified: "I come down here to Dr. Sharpe, he advised me [meaning the claimant] to come back here and it would not cost me anything. I come back here and went and told the head nurse that my back was giving me trouble and I wanted something done for it, and she sent me in there with a colored fellow and had him put an electric battery on and he put that on me and like to have blistered me, and I didn't come back any more—and they [meaning the employer's clinic authorities] told me not to come back any more, and I

136

didn't." Under the facts of this case and under the provisions of the said Code section, this amounted to a refusal on the part of the employer to furnish medical treatment, and the director was authorized to so find. See, in this connection, *Hartford Accident & Indemnity Co.* v. *Sulton*, 75 *Ga. App.* 24 (41 S. E. 2d, 915).

*Judgment reversed.* *MacIntyre, P. J., and Townsend, J., concur.*