### 36853. RITTENHOUSE v. UNITED STATES FIDELITY & GUARANTY COMPANY *et al.*

DECIDED SEPTEMBER 25, 1957.

*Malcolm C. Tarver,* for plaintiff in error.

*Hardin & McCamy, Carlton McCamy,* contra.

TOWNSEND, J. ■ It is contended by counsel for the plaintiff in error that, due to certain irregularities, the depositions of Dr. Thompson taken by counsel for the employer were erroneously considered. The record shows that at the commencement of the hearing counsel for the employer moved to continue for the purpose of taking additional medical testimony, stating they would like for claimant to be examined by Dr. Thompson of Chattanooga. The director stated: "Yes sir, we will leave the file open for additional medical testimony and give you 20 days in which to take that. Mr. Tarver, you understand the claimant is to submit himself for a reasonable examination?" Mr. Tarver: "We will be very glad to do that. I advised Mr. Boggs two or three days ago the name of the doctor. But I think it is quite proper they should have the privilege of having him examined by another doctor. We have no objection to a continuance for that purpose [and] letting us get our doctor." At the conclusion of the hearing the director stated: "I give you 20 days to take your medical testimony." Mr. Tarver: "You want to take Dr. Thompson?" Mr. Boggs: "Yes sir."

Within the 20-day period the depositions of Dr. Thompson were taken and claimant's attorney appeared and cross-examined the witness. He does not now contend that they are inaccurate in any point, or that he was not present or that for lack of notice or any other reason the manner in which the depositions were taken worked any hardship on him. He fails even to contend that there is any irregularity in the taking of the depositions by a notary public of the State of Tennessee, but contends that an agreement recited in the depositions themselves is inaccurate, that the notary public who took them was not one designated by the board, that he did not receive a copy as he should have done, and that the depositions were not *filed with the board* within the 20-day period. Code (Ann.) § 114-706 provides that "if either party at issue desires to take the testimony

of witnesses without the State the Board or the member may
. . . direct the taking of such testimony under the same
rules now pertaining to the taking of testimony of persons with-
out the State in civil cases." Code (Ann.) § 38-2201 provides for
taking depositions without the State "before any officer of the
State or county where the deposition is taken, authorized by
the laws of this State to attest deeds or take acknowledgments."
There is no contention that the Tennessee notary public who
took the depositions of Dr. Thompson was not such a person, and
the failure of the board to specifically designate him in advance
does not, under the terms of this agreement where at the time
both parties knew that an out-of-state witness was to be used,
invalidate the depositions. The depositions were taken within
the time period agreed on, and there was no limitation on the
time they were to be received by the board. Accordingly, no
such irregularity is shown as would invalidate this deposition.
As to the objections urged against a part of the doctor's testi-
mony, it is well settled that an award of a Board of Workmen's
Compensation will not be reversed either because some irrelevant
evidence was admitted (*Liberty Mutual Ins. Co.* v. *Meeks*, 81
*Ga. App.* 800 (2), 60 S. E. 2d 258) or because there is some
irrelevant testimony included in the finding of facts. *American
Mutual Liability Ins. Co.* v. *Sisson*, 198 *Ga.* 623 (32 S. E. 2d
295). The 5 grounds on which alone a reversal may be granted
are listed in Code § 114-710 as follows: (1) the members acted
without or in excess of their powers; (2) the order or decree
was procured by fraud; (3) the facts found do not support the
order; (4) there is not sufficient competent evidence in the record
to warrant the order complained of; and (5) the order or decree
is contrary to law. None of the objections urged against the
depositions of Dr. Thompson are sufficient to authorize reversal
on any of these grounds. This situation in no wise resembles
*American Mutual Liability Ins. Co.* v. *Williams*, 75 *Ga. App.* 129
(42 S. E. 2d 578), where testimony was taken without notice or
opportunity on the part of the opposite party to be present and
cross-examine the witness.

██ ██ There is no merit in the contention that, under the
ruling set forth in *Atlanta Transit System* v. *Harcourt*, 94 *Ga.
App.* 503 (95 S. E. 2d 41) there is no sufficient finding of fact

on the part of the board. While it is true that a mere narrative account of the testimony of witnesses does not meet the statutory requirement, here the hearing director, after summarizing testimony, stated his findings of fact in detail, which findings of fact were specifically adopted by the full board on appeal in its order of affirmance.

■ Lastly, it is contended that there is no sufficient evidence to authorize the denial of compensation to the claimant. It appears that the claimant's duties as an employee in a bedspread factory were such that for several hours a day he would normally run extracts and remove materials from dye vats, and would also fire a coal boiler, work on a washer, and drive a truck. When working at the vats he went barefoot on a cement floor where there was normally an accumulation of moisture, water or dye. Around Christmas, 1956, he was troubled with eruptions on the palms of his hands and soles of his feet which became infected, pustulated and raw, and caused the loss of finger and toe nails. Three physicians testified. A general practitioner gave as his opinion that he examined the claimant on July 17, 1956, and diagnosed the case as a chronic dermatitis infection, cause undetermined. It could be caused and aggravated by the claimant's coming in contact with dyes. He had never had a case of dye poisoning which he could establish as such; this condition could have been caused by a dye used in dyeing bedspreads. There is a possibility the infection could have arisen out of his body by reason of bad teeth; he does not think so, but the bad teeth could aggravate the infection. It could be the result of a fungus infection; his best opinion is that the claimant had a fungus infection of his feet and hands that was aggravated by water or dye or a combination. Regular hydrant water would tend to aggravate the dermatitis.

A dentist testified that he had examined the claimant; that he had infected teeth; that an infection can aggravate another infection by lowering body resistance; that in his opinion the condition of the claimant's teeth did not originally cause the breaking out on his hands and feet but it can aggravate any condition; he has never seen infected teeth cause a breaking out in the skin. A dermatologist testified that he found a pustular eruption of the palms of the hands and soles of the feet caused by infection; that

coming into contact with water or dye would not in his opinion cause this but would aggravate it; that anything, just plain soap and water at home, would aggravate it; that he attributed the condition to the bad state of the claimant's teeth; that working with dyes might tend to gradually increase the degree of severity of the infection but this would be incidental; it would not aggravate it any more than taking a bath at home. There was evidence that other employees in the fatcory were not similarly affected.

From the evidence as a whole the board had evidence on which to base a finding that the claimant had not carried the burden of proving that his disability arose out of and in the course of his employment. All of the medical testimony points to infection (otherwise disease) or infection combined with allergy as the cause of the disability. No analysis of the dye compound was offered so as to bring this case within the occupational disease provisions of Code (Ann.) § 114-803. A disability in the form of a skin condition resulting from working around materials not listed in this Code section is not compensable. See *Nowell v. Employers Mutual Liability Ins. Co.*, 93 *Ga. App.* 288 (91 S. E. 2d 389). It appears from the evidence that while water and dye, no matter how harmless in themselves, might have aggravated a pre-existing condition, water alone, or soap and water, or any other moisture coming in contact with the extremities from any source would do the same thing, and accordingly the evidence did not demand a finding that the work was the aggravating cause of a pre-existing condition. Compare in this connection *Hurt v. U. S. Fidelity & Guaranty Co.*, 95 *Ga. App.* 280 (97 S. E. 2d 646). Since the evidence does not demand a contrary finding, the order denying compensation will not be reversed.

The judge of the superior court did not err in affirming the decree of the full board denying compensation.

*Judgment affirmed. Gardner, P. J., and Carlisle, J., concur.*